IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTINE M. ROBINSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CV-07-BE-1523-S |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security** | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OF DECISION</u>

### I. INTRODUCTION

On December 4, 2003, the claimant filed an application for Supplemental Security Income benefits alleging disability beginning June 1, 2001. On March 1, 2004, the Social Security Administration denied the claim, and claimant appealed the decision requesting reconsideration, and a hearing before an administrative law judge. On January 20, 2006, the ALJ granted benefits to the claimant based on the opinions of her treating physicians. The Appeals Council reviewed the case on an "own motion" review. On June 29, 2006, the Appeals Council vacated the decision as unsupported by substantial evidence and remanded the case for further proceedings. The ALJ held a subsequent supplemental hearing on September 21, 2006. The ALJ denied disability benefits to claimant on January 23, 2007, concluding that claimant was not disabled within the meaning of the Social Security Act, and therefore, was not eligible for Supplemental Security Income Payments. The claimant has exhausted her administrative

1

remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, the Commissioner's decision is REVERSED and REMANDED.

## II. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standard and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).  However, "[n]o..presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### III. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> To make this determination, the Commissioner employs a five-step, sequential evaluations process:
>
> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

### III. FACTS

The claimant was forty-eight years of age at the time of the administrative hearing with a high school education and an associate's degree in social work. (R. 103, 226-227, 257). Claimant has previous work experience as a beautician, cashier, fast food worker, motel housekeeper, sitter, and telemarketer. (R. 264-265). According to the claimant, she became disabled on June 2, 2001 due to a history of low back pain, hypertension, gastroesophageal reflux disease, dysthymic disorder, generalized anxiety disorder, and chronic and severe pain. (R. 21, 37).

3

Claimant testified to leaving her last job due to depression and back pain. (R. 257). Her depression medication also caused her to fall asleep at work. (*Id.*). She has frequent crying spells related to her depression, and she feels her depression has gotten worse over the years. Claimant has had thoughts of hurting herself and continues to suffer with poor sleep and fatigue. (R. 259). Claimant testified that her anxiety does not allow her to leave her house. (R. 259-260).

Dr. William B. Menesse, a clinical neuropsychologist and licensed psychologist, evaluated the claimant in a consultation on February 10, 2004. (R. 151). Dr. Menesse used elements of the Mini Mental Status Exam ("MMSE") and the Neurobehavioral Cognitive Status Exam ("NCSE") to assess the claimant's alleged impairments. (R. 152). According to the MMSE, her inability to sustain attention constituted a moderate impairment. According to the NCSE, problems with her immediate free recall for new information, abstract reasoning, and social judgment skills amounted to severe impairments. (*Id.*). Dr. Memesse noted, however, that her performance on these tests lacked consistency with her observed level of functioning. (*Id.*). He stated that he interpreted the results of the testing but cautioned the reader that he believed she had deliberately exaggerated her cognitive deficits. (*Id.*). In analyzing the claimant's work behavior, the psychologist concluded that the claimant would exhibit moderate functional limitations (according to DDS[1] definitions) in her ability to understand, carry out, and remember work instructions, as well as in her ability to respond appropriately to supervisors, coworkers, and work pressures. (R. 153). Dr. Menesse ultimately diagnosed the claimant with a dysthymic disorder and a generalized anxiety disorder and reported she had obtained a Global Assessment

---

[1]Disability Determination Services

of Functioning[2] score of 60. (*Id.*). He concluded that, given appropriate psychiatric treatment, her 6-12 month prognosis was good for improvement in psychiatric functioning to the point where she could successfully obtain and maintain gainful employment such as that she has held in the past. (*Id.*).

In an April 2005 follow up visit to her treating internist, Dr. Patricia Garver, the claimant admitted that her husband was not making much money, and her step-son's disability benefits supported the family. (R. 204). Claimant reported being overwhelmed about going back to work and not being home to take care of her stepson. (*Id.*). Additionally, the claimant requested from Dr. Garver a short extension on her medical disability and stated that she will be back at work "hopefully in the next two months." (*Id.*).

On October 28, 2005, Dr. Tom Edwards, another treating physician who specializes in family practice, evaluated the claimant based on complaints of back pain. (R. 205). The record contains a Physical Capacities Evaluation Form. (R. 192-195). Dr. Edwards reported in this questionnaire form that he did not know how long the claimant could sit, stand, or walk during an eight hour day. (*Id.*). He reported that he did not know the most reasonable lifting and/or carrying expectation for the claimant, and the claimant experienced pain to such a degree as to be distracting to adequate performance of daily activities or work. (*Id.*). Dr. Edwards further

---

[2]The Global Assessment of Function Scale (GAF) is used to reflect a clinician's judgment of the individual's overall level of functioning. A GAF score of 51-60 indicates the presence of Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
*See* American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 30-34 (4th ed. 2000)(DSM-IV).

reported that physical activity would increase her pain to such a degree as to cause distraction from tasks or total abandonment of tasks, and she had an underlying medical condition consistent with the pain she described. Dr. Edwards reported in a progress note dated October 28, 2005, that he had questioned the claimant regarding her limitations due to chronic lower back pain and he had completed the disability questionnaire with the claimant face to face. (R. 213). Dr. Edwards 2006 medical notes show that the claimant was prescribed a back brace, and she subsequently complained of increased pain. (R. 197-200). However, Dr. Edwards described the claimant's back pain as "mild lumbar tenderness" and reported that bilateral straight leg raising was negative. (*Id.*).

The ALJ held an initial hearing on November 15, 2005 where the claimant testified to her work history and subjective symptoms of her alleged disability. (R. 224-250). Claimant described her past relevant work ("PRW") experience as a fast food worker, housekeeper, telemarketer, and part-time sitter. (*Id.*). The claimant described her pain as "sharp pain" and testified that she currently could not work due to her anxiety, depression, and inability to stay focused. (R. 230, 235). Norma-Jill Jacobson, a Vocational Expert ("VE"), was present at this hearing to perform the claimant's comprehensive vocational assessment. (R. 243-250). The VE testified all of claimant's PRW was light and unskilled except that her job as a telemarketer was unskilled and sedentary in physical demands. (R. 243). The ALJ posed a series of questions to the vocational expert. First, the ALJ asked the VE to assume that the claimant has back pain, anxiety, and she cannot stay focused or be around other people. The ALJ then asked the VE whether these impairments would vocationally affect her ability to work. (*Id.*). The VE testified that if

6

claimant's pain or anxiety was mild to moderate, she could work; but if either the pain and/or the anxiety was moderately severe or a greater level, she would not be able to work. (R. 245). The ALJ posed a second hypothetical question to the VE—based on the claimant's age, educational level, and accepting claimant's testimony concerning her inability to stay focused on tasks and relate to other people—regarding whether there would be vocational consequences to these limitations. (R. 246-247). The VE stated that the claimant would be an unsuccessful worker as a result of her inability to stay focused, either because of her pain or anxiety. (R. 247).

In the meantime, the claimant underwent an evaluation conducted by Dr. Charles E. Herlihy, a consulting psychiatrist on September 18, 2006. (R. 206). Dr. Herlihy reported that claimant was very slow moving, and her mood was depressed. (R. 207). Based on his diagnostic interview, he reported that he felt she had a chronic recurrent depressive disorder, and her anxiety was part of her chronic depression. (R. 206). Dr. Herlihy also noted that she had a somatoform pain disorder which meant "that she has chronic pain that cannot be explained on the basis of any orthopedic findings." (R. 207). Dr. Herlihy opined that the claimant would equal the listing for affective disorder (depression), and that he did not believe that she would respond very well to medications even though she had not seen a mental health professional for any length of time. (R. 207).

On remand, the ALJ held an additional hearing on September 21, 2006. Dan L. Kinard, a vocational expert, testified regarding the claimant's PRW as a cashier, fast food worker, motel housekeeper, and sitter. (R. 264-265). Conforming to the *Dictionary of Occupational Titles*, the VE determined that claimant's PRW was unskilled work and required light levels of physical

7

exertion. (*Id.*). The ALJ then asked the VE a series of hypothetical questions. The ALJ first asked the VE if jobs existed in local or national economy for a hypothetical individual who is of the claimant's age, educational background, has the claimant's past relevant work experience, and who could perform light work. (R. 265). The VE testified that such an individual could perform light and unskilled work such as a packaging of small parts, working as a storage facility clerk, and working as a wire cutter, which are all jobs that exist in significant numbers in the local as well as national economy. (R. 265-266). The ALJ then asked if the same individual could do sedentary work, and the VE answered affirmatively. (R. 266). In the next hypothetical, the ALJ asked the VE to apply the two earlier hypothetical questions to an individual like the claimant, giving full credit to the claimant's testimony regarding her pain. (*Id.*). The VE was then asked to explain how her alleged pain would erode the occupation base described in his earlier answers. (*Id.*). VE Kinard testified that her pain would preclude gainful activity because of her inability to maintain work, adequate attendance, as well as persistence and pace in the work setting. (R. 267). In the ALJ's final hypothetical, he asked the VE to give full credit to the claimant's testimony regarding her depression and whether one of those scenarios would erode the occupation base discussed earlier. (*Id.*). The VE testified that the claimant's depression would rise to the marked level of impairment, which would also preclude gainful activity. (*Id.*).

  The ALJ concluded that claimant has not engaged in substantial gainful activity since June 1, 2001. (R. 21). Based on the evidence of record, the ALJ found that the claimant's side effects of medication, history of low back pain, hypertension, gastroesophageal reflux disease, dysthemic disorder, and generalized anxiety disorder were all "severe" impairments; however,

they only imposed moderate restrictions on her activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (R. 24). Because none of these impairments has been shown to impose limitations mentioned in the listings, the ALJ concluded that claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ also determined that the claimant has the residual functional capacity to perform light work with mild to moderate mental limitations and that her impairments did not prevent her from performing past relevant work. (R. 24, 26).

After consideration of the evidence of the record, the ALJ found that the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. 25). The ALJ determined that although the claimant alleges that she has chronic pain that limits her ability to perform tasks, the medical evidence of record does not show that she has pain that is more than, at most, moderate pain. (*Id.*). Moreover, the ALJ stated that the medical evidence of record shows no medically determinable impairment that could reasonably give rise to the levels of pain alleged by the claimant. (*Id.*).

The ALJ gave significant weight to Dr. Menesse's opinions, because they were consistent with the great weight of the medical evidence of record as well as with Dr. Menesse's own objective findings. (R. 26). The ALJ discounted Dr. Herlihy's opinions "because the claimant sought to mislead him regarding her condition." (R. 25). The ALJ explained that the claimant made inconsistent statements to Dr. Herlihy and claimant's treating physician, Dr. Garver,

9

regarding the exact reason why she could no longer work. (*Id.*). The ALJ also discounted Dr. Edwards's assessment of the claimant's physical limitations, because his assessment was inconsistent with the great weight of the medical evidence. (R. 26). On this basis, the ALJ found that the claimant has the residual functional capacity to perform light work with mild to moderate mental limitations. (*Id.*).

In comparing the claimant's residual functional capacity with the physical and mental demands of her work, the ALJ determined that the claimant is able to perform past relevant work as a cashier, fast food worker, motel housekeeper, and a sitter, as her mild to moderate mental limitations will not prohibit her from performing unskilled work. (R. 26). Thus, the ALJ ruled that the claimant was not entitled to receive Disability Insurance Benefits based on her application filed on December 4, 2003. (*Id.*).

## V. Issue Presented

In this appeal, the claimant argues that the ALJ failed to pose a proper hypothetical to the Vocational Expert.[3]

## VI. Discussion

### A. FAILURE OF THE ALJ TO POSE A PROPER HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT

The claimant argues that the ALJ's hypothetical questions were improper and cannot serve as substantial evidence. Specifically, claimant alleges the hypothetical questions were not complete in that the ALJ failed to include the consultative opinion of Dr. Menesse to which the

---

[3] Claimant also presents an additional issue alleging that the ALJ failed to properly report the medical evidence of record. Because the court's decision on the first issue is dispositive, the court will not address the remaining issue.

ALJ claimed to give significant weight. Claimant alleges that the ALJ failed to include even one of the limitations that Dr. Menesse reported would be at the "severely impaired" level in the hypothetical to the vocational expert. (*See Pl.'s Mem. 5*).

When a claimant cannot perform a full range of work at a given level of exertion and has nonexertional impairments that significantly limit basic work skills, the preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a VE. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.1999). Examples of nonexertional mental impairments include "difficulty maintaining attention or concentrating," and "difficulty understanding or remembering detailed instructions." *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). For a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the claimant's impairments. *Wilson v. Barnhart*, 284 F.3d. 1219, 1227 (11th Cir. 2002). However, the hypothetical need only include the claimant's *impairments*, "not each and every *symptom*" that she experienced. *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (emphasis added). "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Desrosiers v. Sec'y Health & Human Servs.*, 846 F 2.d 573, 578 (9th Cir. 1988). The ALJ is not required to include findings in the hypothetical that he finds are unsupported. *Crawford v. Comm. of Social Security,* 363 F.3d 1155, 1161 (11th Cir. 2004).

Claimant argues that Dr. Menesse opined that the claimant's recent/delayed memory for new information was "severely" impaired, and her abstract reasoning and social judgment skills were "severely" impaired. However, the claimant mischaracterizes the examiner's opinion. Dr.

Menesse did not find claimant's impairments to be severe.  He did report that, according to the MMSE, her ability to sustain attention constituted a moderate impairment, and according to the NCSE, her immediate free recall for new information, abstract reasoning, and social judgment skills amounted to severe impairments.  In reporting those test results, Dr. Menesse  cautioned the reader that he believed she had deliberately exaggerated her cognitive deficits. Furthermore, he noted that claimant's performance on these tests lacked consistency with her observed level of functioning. Ultimately, Dr. Menesse determined that the claimant would exhibit only "moderate" functional limitations (according to DDS definitions) in her ability to understand, carry out, and remember work instructions, as well as in her ability to respond appropriately to supervisors, coworkers, and work pressures.

In his opinion, the ALJ stated that, "[s]ignificant weight is given to Dr. Menesse's opinions as they are consistent with the great weight of the medical evidence of record and also with his own objective findings." (R. 26).[4]  Because the ALJ allocated significant weight to Dr. Menesse's opinions, a proper hypothetical would have asked the VE to assume the nonexertional limitations included in Dr. Menesse's opinion, such as moderate limitations in the claimant's ability to understand, carry out, and remember work instructions, as well as moderate limitations in the claimant's ability to respond appropriately to supervisors, coworkers, and work pressures. The ALJ's failure to list those nonexertional limitations in his hypothetical represents error, and

---

[4] Because the ALJ gave great weight to Dr. Menesse's "opinions" and did not separate out, for example, the doctor's opinion that claimant deliberately exaggerated her cognitive deficits on her tests, the court must assume that the ALJ gave great weight to all of Dr. Menesse's opinions, including the opinion that claimant deliberately exaggerated her cognitive deficits.

the VE's testimony based on the improper hypothetical cannot constitute substantial evidence to support the ALJ's determination.

## VII. CONCLUSION

Finding that the Commissioner's decision is not based upon substantial evidence, the court REVERSES and REMANDS this case. The court makes no findings as to the other issues presented in this appeal.

The court will enter a separate Order in conformity with this memorandum.

Dated this 30th day of March 2009.

                                                  KARON OWEN BOWDRE
                                                  UNITED STATES DISTRICT JUDGE